## THE KING vs. HELELIILII.

EXCEPTIONS FROM CIRCUIT COURT, THIRD JUDICIAL CIRCUIT.

JULY TERM, 1883.

JUDD, C. J., and AUSTIN, J.    McCULLY, J., absent.

In order to sustain a conviction for knowingly uttering a forged check, the instrument need not be so made that if genuine it would be valid.

A check informally and awkwardly drawn held to be valid, when coupled with the statement of defendant, the endorser, that it was genuine.

The Court will take judicial notice of the condition of communities on the different islands, and their modes of transacting business.

After both parties have rested, it is in the discretion of the Court to allow the prosecution to put in evidence inadvertently omitted.

OPINION OF THE COURT BY AUSTIN, J.

This case comes here on exceptions, for errors of law.

The defendant, on trial before Mr. Justice Austin, at the Third Judicial Circuit Court, in May, 1883, was convicted of uttering a false or forged draft, check or order, knowing it to be false or forged.

The defendant claims, first, that the paper, if uttered, did not carry on its face the semblance of that for which it was counterfeited, and that it was obviously invalid, void and of no effect, and so the defendant cannot be convicted because of the provisions of subdivision seven of the statute of forgery.

The paper in question is as follows:

"Banking House of Bishop.& Co."

Honolulu, H. I.,                1883.

bearer

Pay to              January 13                   or order

Dollars.

$55.00.                                  MR. GREENN.

It is endorsed in writing "L. Hall."

The figure "3" and the words and figures "January 13," "55.00" and "Mr. Greenn" are written, and the word "bearer" seems to be printed by stamp in red.

All the rest of the paper is printed, and the whole appears substantially as quoted above.

The defendant represented it to be a good plantation draft for fifty-five dollars, and it was accepted as such and endorsed by the defendant, as stated, with what he said was his name in English.

The paper thus presented and passed was not subject to the objection referred to in subdivision 7 (seven).

That subdivision (see Chap. 30, Penal Code) says that "to constitute forgery, it is not essential that the forged instrument should be so made that if genuine it would be valid."

This paper was passed to a Chinese storekeeper at Kohala, on Hawaii, who swore that he did not understand English. The Court will take judicial notice of the condition of communities on the different islands. As a matter of fact, it is well known that many Chinese and others who do not understand English are engaged throughout the islands in commercial business, in a small way, to whom drafts to be cashed are frequently presented.

This fact is proper to be considered in examining the case, and although such a paper might not be taken by a good business man understanding English, it might well be taken as it was in this case.

We think the paper uttered, though informally and awkwardly drawn, would, if genuine, have been a valid check which could have been enforced against the drawer, and against Bishop & Co., if the drawer had funds in their hands.

It was addressed to Bishop & Co. It was dated, though irregularly. But no date was necessary to its validity. It was not a time check, but was payable at sight. "If the date should become necessary to be inquired into, it may be ascertained by evidence, and the date will be computed from the day it was actually made or issued."

See Story on Bills of Exchange, Sec. 37 and notes.

The check was payable to bearer, and no payee was necessary to be named. "A blank may be left for the name, and any *bona fide* holder may insert his name as payee *ab initio*."

2

See Story on Bills, Sec. 54.

"If the Bill be made payable to —————— or order, any *bona fide* holder may fill up the blank with his own name, and he will be deemed to have been such from the origin of the bill."

*Id.*, Sec. 56.

The defendant, who claimed to be the *bona fide* holder in this case, endorsed the check. For the purpose of its validity, this was as though he had also written his name in the body as payee.

The place where the check is drawn need not be stated on its face.

See *Id.*, Sec. 40.

The amount is expressed in figures only. This has been held ·sufficient, though suspicious.

See Parsons on Notes and Bills, pp. 28, 29, 26, 27, Vol. I.

But it was accompanied by a statement of the defendant that he was a *bona fide* holder of the check. If the bill be signed in blank and be afterwards filled up by a person who is authorized to do so, it will be obligatory upon the parties to it.

See Story on Bills, Sec. 53.

The defendant had authority, if requisite, and if what he said was true, to fill in the amount in writing, and the one to whom he passed the check had a like authority.

See *Id.*, Secs. 53, 54 and 56.

Upon these familiar authorities, we think that the Chinese who took the check was justified in doing so, upon its being declared by the defendant to be genuine. The figures in the margin, with the statement of the defendant that it was a valid draft for fifty-five dollars, was sufficient to allay all suspicions. Any good business man would have been justified in taking it under such circumstances from a person whom he well knew.

See also *The King* vs. *Kalaluhi*, 3d Hawn. 417.

The defendant's counsel further claimed that there was no evidence that the paper was forged.

By comparison of the signature to the paper with the endorsement proved to be made by the defendant, it is apparent that the defendant did not personally sign the name "Mr. Greenn," and therefore he did not commit actual forgery, though if he directed or adopted it, it may be he could have been convicted of forgery,

but certainly if he uttered it, knowing it to be false or forged, he could be convicted as he was.

We think the evidence that it was forged, and that he knew it to be so, was sufficient. The Chinese who received it said he " passed it to a Chinaman, and it was afterwards returned to him unpaid."

It was passed at Kohala, February 24, 1883, and was represented to be a genuine plantation draft. Proof was made that no such man as Greenn lives or was doing business at Kohala. The defendant had represented that it was a good plantation draft, and there are several plantations at Kohala.

This proof was competent, and tended to show that the draft was false or forged, or that it was fictitious.

The proof was prima facie sufficient. If the draft was genuine, the defendant must have known it, and was bound to prove it after that proof by the Crown.

See 3d Greenleaf, Sec. 109.

In addition to this proof, the defendant says, on his cross-examination : "I returned the clothing—two coats, one long and one short, etc. The Chinaman came to me to return them, saying he had not got the money for them. It was December 30, 1882. I got them, and I returned them in February."

The Crown witnesses say that this clothing was got on February 24th, when the forged check was uttered. The defendant denies that he then got the clothing or uttered the order, but admits that he returned the clothing to the Chinaman. The jury disbelieved him as to the time, but believed that he returned the clothes which were got on the forged order. This was strong proof that he knew the order was not genuine.

There was ample evidence to put the defendant to his proof that the draft was genuine.

The defendant's counsel further objected that the proof that there was no such person as Greenn at Kohala, ought not to have been admitted, as it was, after the close of all the evidence, and both parties had rested.

This evidence had been inadvertently omitted by the prosecution, and tended slightly to strengthen the other proof on the

point. The admission of the proof at this stage was in the discretion of the Court, and the discretion was properly exercised.

See *Alexander vs. Byron*, 2 Johnson's Cases ; *Mercer vs. Sayre*, 7 Johnson's Reports 306 ; 7 Greenleaf 181 ; Graham on New Trials, pp. 259, 260.

It may be that the defendant might also have been convicted of " gross cheat," but he was properly convicted on the indictment.

*Judgment affirmed.*

*E. Preston*, for Crown.

*Smith & Thurston*, for defendant.

Honolulu, September 7, 1883.